**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHELLE MASON, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:19-cv-00973-CB |
| | ) |
| v. | ) Judge Cathy Bissoon |
| | ) |
| LOWE'S COMPANIES, INC.; LOWE'S HOME CENTERS, LLC; TIM STRATTON; JOE BECTON; STEPHANIE MILLER; JOHN P. MORONE; AND ANDREA DEJOHN, | ) *Electronically Filed* |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

**I.   INTRODUCTION**

During her employment with Lowe's, Plaintiff Michelle Mason and Lowe's entered into a valid and enforceable arbitration agreement with Lowe's, by which she and Lowe's agreed to arbitrate any and all claims arising out of her employment with Lowe's or the termination of her employment. In derogation of that agreement, Mason filed this lawsuit claiming that she was subjected to sex and race discrimination under Section 1981, Title VII, and the PHRA. These claims, however, fall squarely within the ambit of the parties' arbitration agreement. Since there are no grounds for invalidating the arbitration agreement under Pennsylvania law, and Mason's claims unquestionably fall within the scope of the arbitration agreement, this Honorable Court must compel Mason to submit her claims to arbitration and dismiss, or in the alternative, stay, this action pending arbitration.

## II.     FACTUAL BACKGROUND[1]

Lowe's hired Mason in 2012 at its store in Robinson Township, PA.  Compl., ECF No. 1, ¶ 11. In October 2015, Lowe's promoted Mason to store manager at its Richland, PA store.  *Id.* ¶ 12. In October 2017, Mason transferred to the Store Manager position at the Lowe's store in Cranberry, PA.  *Id.* ¶ 20.  Lowe's terminated Mason's employment on June 29, 2018.

### A.     Mason Agreed to Arbitrate Claims Arising out of Her Employment or the Termination of Her Employment with Lowe's.

In March of 2018, Store Managers were offered the opportunity to participate in Lowe's Manager Bonus Program.  Ex. A, Declaration of Natalia League ("League Decl."), ¶ 3; Compl., ECF No. 1, ¶ 113.  In order to participate in Lowe's Manager Bonus Program and in consideration of continued employment, Lowe's requires managers to enter into an Agreement to Arbitrate Disputes ("Arbitration Agreement").  League Decl., ¶ 4; Compl., ECF No. 1, ¶ 113.[2]

Managers were given the option to print and sign a paper copy of the Arbitration Agreement or electronically accept the terms of the Arbitration Agreement.  League Decl., ¶ 5. To electronically accept the terms of the Arbitration Agreement, a manager was required to: (1) log in to Lowe's Learning & Talent Center webpage through "My Lowe's" using his/her unique ID and password, (2) click on "Arbitration Agreement" under the manager's Learning Assignment tab, (3) read the Arbitration Agreement, and (4) click "Agree" to accept the terms of the Arbitration Agreement.  *Id.*  A copy of the Arbitration Agreement is available for the manager to print after the manager electronically accepts the terms of the Agreement.  *Id.*

---

[1] Lowe's sets forth certain of the allegations in the complaint solely for purposes of this motion and is not admitting the truth of the allegations for any purposes. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010).

[2] A true and accurate copy of the Arbitration Agreement is attached to the League Decl. as Ex. 1, and also attached to Plaintiff's complaint as Ex. 2.

2

On March 12, 2018, Lowe's uploaded the 2018 Arbitration Agreement to Mason's Learning Assignment on Lowe's Learning & Talent Center webpage. *Id.* ¶ 6; Compl., ECF No. 1, ¶ 113. Mason admits that she was informed of the Arbitration Agreement. *Id.* ¶¶ 114. And she electronically accepted the terms of the Arbitration Agreement, consistent with Lowe's standard practice for electronic acceptances, on March 20, 2018. League Decl., ¶ 6. As Mason admits, she "went to her computer terminal[,]" "opened the agreement, scrolled to the bottom, and clicked the 'Agree' button." Compl., ECF No. 1, ¶ 117. A copy of a portion of Mason's Learning and Talent Center Transcript evidencing her electronic acceptance on March 20, 2018, is attached to the League Decl. as Ex. 2.

By clicking "Agree" on the form, Mason "acknowledge[d] that [she] [had] read and underst[ood] the above provisions and affirmatively agree[d] to be bound by the terms of this agreement to arbitrate disputes." League Decl., Ex. 1 (capitalization removed). The Arbitration Agreement provides, in pertinent part:

### Agreement to Arbitration Disputes

In exchange for the mutual promises in this Agreement, your continued employment by Lowe's Home Centers, LLC and its successors or assigns (hereinafter "Lowe's"), and your participation in the 2018 Manager Bonus Program applicable to your job title, **you and Lowe's agree that any controversy between you and Lowe's (including any agents of Lowe's and any of Lowe's predecessors, including but not limited to Lowe's Home Centers, Inc. and Lowe's HIW, Inc.) arising out of your employment or termination of your employment shall be settled by binding arbitration**, (at the insistence of either you or Lowe's conducted by a single arbitrator under the current applicable rules, procedures and protocols of JAMS Inc. ("JAMS") or the American Arbitration Association ("AAA"), as may be amended from time to time . . . .

THIS AGREEMENT TO ARBITRATE DISPUTES MEANS THAT, EXCEPT AS PROVIDED HEREIN, THERE WILL BE NO COURT OR JURY TRIAL OF DISPUTES BETWEEN YOU AND LOWE'S WHICH ARISE OUT OF YOUR EMPLOYMENT OR THE TERMINATION OF YOUR EMPLOYMENT. . . .

> **This Agreement to Arbitrate Disputes is intended to be broad and to cover, to the extent otherwise permitted by law, all such disputes between you and Lowe's including but not limited to those arising out of federal and state statutes and local ordinances, such as: Title VII of the Civil Rights Act of 1964, as amended**; the Civil Rights Act of 1866; the Sarbanes-Oxley Act of 2002; the Equal Pay Act; the Fair Labor Standards Act; the Pregnancy Discrimination Act; the Family and Medical Leave Act; the Americans with Disabilities Act; the Fair Credit Reporting Act; and any similar federal, state and local laws . . . .
>
> You and Lowe's agree that this Agreement to Arbitrate Disputes shall apply to all positions you may hold as an employee of Lowe's . . . .

*Id.* (all caps in original; additional emphasis added); *see also* Compl., Ex. 2. The parties further agreed to "select a mutually agreeable arbitration location" and that Lowe's would bear all filing fees and expenses attendant to arbitration, except Mason agreed to pay the initial filing fee up to $150.00 if the parties initiated arbitration. *Id.*

      **B.**    **Mason Breached the Arbitration Agreement.**

Instead of submitting her claims to arbitration as required by the Arbitration Agreement, Mason filed this lawsuit in early August. *See* Compl., ECF No. 1. Mason alleges that she was discriminated against because of her sex and race and subjected to retaliation. *See id.* ¶¶ 124-64. Mason also seeks a declaratory judgment that her Arbitration Agreement with Lowe's is unenforceable. *See id.* ¶¶ 165-66.

**III.**    <u>**STANDARD OF REVIEW**</u>

Lowe's motion to compel or, in the alternative, to dismiss, is considered under the Rule 12(b)(6) standard. *See Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652, 656 (W.D. Pa. 2014) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)). As the Third Circuit has explained, where, as here, "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule

4

12(b)(6) standard without discovery's delay.'" *Guidotti*, 716 F.3d at 776.  In considering a Rule 12(b)(6) motion, the must consider whether the complaint provides "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'"[3]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## IV.  ARGUMENT

The Arbitration Agreement is enforceable under the Federal Arbitration Act.  Therefore, Mason should be compelled to submit her claims to arbitration, as they fall squarely within the scope of the Agreement.

The Federal Arbitration Act manifests a "liberal federal policy favoring arbitration agreements" and was passed with the purpose of moving litigants "out of court and into arbitration as quickly and easily as possible."[4]  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-24 (1983).  This federal policy in favor of arbitration applies equally in the employment context.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *Lloyd v. HOVENSA, LLC*, 497 F.3d 355, 363 (3d Cir. 2007).  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a

---

[3] "[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," the court should consider the motion to compel under the summary judgment standard.  *Guidotti*, 716 F.3d at 776.  Here, it is clear from the face of the complaint and the copy of the Arbitration Agreement attached thereto that Plaintiff agreed to arbitrate any disputes with Lowe's.  Plaintiff also lacks any evidence to sufficient to place the validity of the Arbitration Agreement in question.  Regardless, even under the summary judgment standard, Lowe's motion should be granted.

[4] The FAA governs any arbitration agreement "evidencing a transaction involving commerce … even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).  Here, in the ordinary course of their business, Lowe's operates over 2,000 stores across North America and relies upon clients, suppliers, and vendors across numerous industries all over the United States.  Thus, there can be no dispute that the FAA governs the parties' Arbitration Agreement.

> transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

A party aggrieved by another party's failure to arbitrate may move "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.  In ruling on a motion to compel arbitration, the court considers only "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  If so, a party to a valid and enforceable arbitration agreement is entitled to a stay pending arbitration.  9 U.S.C. § 3.

The Supreme Court has repeatedly emphasized that the FAA does not provide a district court any discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  If a party identifies any issues subject to arbitration under a valid arbitration agreement, Section 3 "mandates that . . . courts shall" stay the action as to those issues until they are arbitrated under the arbitration agreement.  *Id.*  As the party resisting arbitration, the plaintiff "bear[s] the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

      **A.    The Arbitration Agreement is valid.**

The validity of an arbitration agreement is determined by applying general principles of contract law.  *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).  Under Pennsylvania law, to determine if a valid arbitration agreement exists, the court must examine "1) whether both parties manifested an intention to be bound by the agreement; 2) whether the terms of the agreement are sufficiently definite to be enforced; and 3) whether there was

6

consideration." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

In this case, Mason agreed to be bound by the Arbitration Agreement by clicking "Agree" on March 20, 2018. League Decl., ¶ 6. In so doing, Mason "acknowledge[d] that [she] [had] read and underst[ood] the above provisions and affirmatively agree[d] to be bound by the terms of this agreement to arbitrate disputes." League Decl., Ex. 2. In addition, the terms of the Arbitration Agreement are clear enough to be enforced. Mason "and Lowe's agree[d] that any controversy between [her] and Lowe's (including any agents of Lowe's and any of Lowe's predecessors, including but not limited to Lowe's Home Centers, Inc. and Lowe's HIW, Inc.) arising out of [her] employment or termination of [her] employment shall be settled by binding arbitration." *Id.* No more than that is required under the FAA and Pennsylvania law, especially in light of the presumption in favor of arbitrability. *See Moses H. Cone*, 460 U.S. at 24 (noting "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").

The Arbitration Agreement is also supported by consideration. As the Third Circuit has recognized, "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair*, 283 F.3d at 603. Here, in the Arbitration Agreement, Mason *and* Lowe's agreed that all disputes arising out Mason's employment or the termination of her employment shall be settled by arbitration. *See* League Decl., Ex. 1. Thus, there is valid consideration. Courts have also "repeatedly held that continued employment fulfills the consideration requirement under Pennsylvania law." *Grant v. Philadelphia Eagles LLC*, 2009 WL 1845231, 2009 U.S. Dist. LEXIS 53075, at *2 (E.D. Pa. June 24, 2009). Also, Mason would not have been eligible to participate in the 2018 Manager Bonus Program unless she signed the Arbitration Agreement, which served as additional

7

consideration for the Arbitration Agreement.  *See, e.g.*, *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 535 (W.D. Pa. 2018) (explaining that participation in an incentive compensation plan constitutes consideration).  For all these reasons, the Arbitration Agreement is supported by consideration and should be enforced.

        **B.**        **Mason's claims fall within the scope of the Arbitration Agreement.**

The scope of the Arbitration Agreement is broad:  Mason "and Lowe's agree[d] that ***any controversy*** between [her] and Lowe's (including any agents of Lowe's and any of Lowe's predecessors, including but not limited to Lowe's Home Centers, Inc. and Lowe's HIW, Inc.) ***arising out of [her] employment or termination of [her] employment*** shall be settled by binding arbitration." League Decl., Ex. 1 (emphasis added).  Claims under Title VII, the Civil Rights Act of 1866, "and any similar federal, state and local laws" are expressly covered by the Arbitration Agreement.  *Id.*  Mason's claims for discrimination and retaliation under Section 1981, Title VII, and the PHRA are clearly encompassed with that broad scope of coverage.  Thus, Mason should be compelled to arbitrate these claims in accordance with the Arbitration Agreement.

        **C.**        **Mason's attempts to invalidate the Arbitration Agreement are baseless.**

Contrary to Mason's conclusory contentions in the complaint, there are no grounds to invalidate the Arbitration Agreement under Pennsylvania law.  *See* Compl. ¶¶ 165-66, ECF No. 1 (suggesting that the Arbitration Agreement may be unenforceable (1) for lack of consideration, (2) because Lowe's breached the duty of good faith and fair dealing, (3) because she was coerced to sign the agreement, and/or (4) because Lowe's obtain her signature on the agreement through fraud).

First, as set forth above, the Arbitration Agreement is supported by consideration because, among other things, both Mason *and* Lowe's agreed to arbitrate their claims.  *See*

*supra*, at pp. 7-8.

Second, Mason cannot rely on an alleged breach of the duty of good faith and fair dealing to attempt to invalidate the Arbitration Agreement. Mason admits that she was an at-will employee, Compl, ECF No. 1, ¶ 120, and Pennsylvania courts have repeatedly held that an employee "cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for the termination of an at-will employment relationship." *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 243 (Pa. Super. Ct. 2000); *see also Tatsis v. Ariba, Inc.*, 2005 U.S. Dist. LEXIS 6110, at *18 (W.D. Pa. Apr. 12, 2005) ("In an at-will employment situation, the covenant of good faith and fair dealing is not implicated."). It follows that Mason, as an at-will employee, cannot rely on the covenant of good faith and fair dealing to invalidate her Arbitration Agreement. Indeed, no court has ruled that requiring an employee to sign an arbitration agreement in order to participate in a bonus program violates a duty of good faith and fair dealing, and any suggestion that this Honorable Court should make such a determination lacks any legal precedent.

Third, Mason's claim that she was "coerced" into accepting the Arbitration Agreement is without merit. Under Pennsylvania law, "'[d]uress exists whenever one person, by the unlawful act of another, is induced to enter into contractual relations under such circumstances as to indicate that he has been deprived of the exercise of free will.'" *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir. 1985) (quoting *Litten v. Jonathan Logan, Inc.*, 286 A.2d 913, 917-18 (Pa. Super. Ct. 1977)). In *Harsco*, the Third Circuit rejected an employee's argument that he was under duress when ordered to sign an employment contract two years after he began employment, despite the employee's claim that he was "humiliated, harassed, cursed at and threatened by the [employer's] employees to sign the Employment Agreement against his will."

*Id.* The employee also claimed that he would "be fired if he did not sign." *Id.* Even accepting those facts as true, the Third Circuit held that the employee failed to establish duress. *Id.* So too here. Mason's allegations do not rise to the level necessary to show that she was under duress or coerced into accepting the Arbitration Agreement. Accepting her allegations as true, she was told only that "that she had to sign the agreement." Compl., ECF No. 1, ¶ 114. While Mason claims that she "feared that if she defied Becton, he would subject her to further harassment," *id.* ¶ 115, there is no basis for this allegation. It is simply Mason's speculation about what would happen if she did not sign the Arbitration Agreement. Even if Mason feared that she would be terminated if she did not accept, she "fail[s] to cite any cases from Pennsylvania or the Third Circuit where a court has held that the threat of termination constitutes duress" or coercion. *Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 15 (E.D. Pa. 2009).

Finally, Mason cannot establish that she was fraudulently induced to execute the Arbitration Agreement. Mason admits that "Lowe's added the arbitration agreement to Mason's Learning Packet in early March 2018." Compl., ECF No. 1, ¶ 113. She also admits that both Joe Becton and Connie Lombardo discussed the Arbitration Agreement with her. *Id.* ¶¶ 114-16. More to the point, the Arbitration Agreement itself belies Mason's claim that Lowe's did not disclose the material terms of the Arbitration Agreement.

Indeed, the Arbitration Agreement makes clear in all capital letters:

THIS AGREEMENT TO ARBITRATE DISPUTES MEANS THAT, EXCEPT AS PROVIDED HEREIN, THERE WILL BE NO COURT OR JURY TRIAL OF DISPUTES BETWEEN YOU AND LOWE'S WHICH ARISE OUT OF YOUR EMPLOYMENT OR THE TERMINATION OF YOUR EMPLOYMENT. . . .

League Decl., Ex. 2; Compl. Ex. 2. It also states in bold, underlined letters at the top of the document that that it is an "**Agreement to Arbitrate Disputes**." *Id.* And, right above where Mason clicked "Agree," it emphasizes that "BY ACCEPTING THIS AGREEMENT, YOU

ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE ABOVE PROVISIONS AND AFFIRMATIVELY AGREE TO BE BOUND BY THE AGREEMENT TO ARBITRATE DISPUTES." *Id.* (all caps in original).

As a result, it could not have been clearer what Mason was agreeing to by clicking "Agree." "These types of warnings are included in arbitration agreements to bolster the prospect of their enforcement against less sophisticated parties who may claim that they failed to understand the ramifications of arbitration, and courts often point to them for support when rejecting those very arguments." *Allstate Ins. Co. v. Toll Bros.*, 171 F. Supp. 3d 417, 431 (E.D. Pa. 2016) (citing *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 183 n.4 (E.D. Pa. 2010) (explaining that the inclusion of 'several lines in capital letters relating to the waiver of jury trial rights' weighed in favor of enforceability); *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1221 (Pa. Super. Ct. 2015) (enforcing an arbitration agreement that "contain[ed] a conspicuous, large, bolded notification that the parties, by signing, are waiving the right to a trial before a judge or jury")).

Despite that clear and conspicuous language, Mason makes much of the fact that she did not read the Arbitration Agreement, and, allegedly, no one explained its terms to her. Compl., ECF No. 1, ¶ 123. But that is no basis to invalidate the Agreement. *See Clouser v. Golden Gate Nat'l Senior Care, LLC*, 2016 WL 1179214, 2016 U.S. Dist. LEXIS 37880, at *17 (W.D. Pa. Mar. 23, 2016) ("Plaintiff's argument that [defendant] did not explain these terms to her and that she did not read the ADR Agreement is unpersuasive."). A party is "expected to have read the contract[,]" and "any failure to read the contract is an unavailing excuse." *Patel v. Am. Safety Indem. Co.*, 2016 WL 520994, 2016 U.S. Dist. LEXIS 16166, at *19 n.3 (W.D. Pa. Feb. 10, 2016) (citing *Standard Venetian Blind Co. v. Am. Empire Ins.*, 469 A.2d 563, 567 (Pa. 1983)).

Likewise, Lowe's was not required to advise Mason to consult with a lawyer for the Arbitration Agreement to be enforceable.  *See Knights Collision Ctr., LLC v. AAA Mid-Atlantic, Inc.*, 2010 WL 1141334, 2010 U.S. Dist. LEXIS 28399, at * 10 n.6 (E.D. Pa. Mar. 25, 2010) (rejecting the plaintiff's claim that an agreement was not enforceable because he was not advised to consult with a lawyer); *Ace Am. Ins. Co. v. Guerriero*, 2017 WL 3641905, 2017 U.S. Dist. LEXIS 135891, at *24-25 (D.N.J. Aug. 24, 2017) (rejecting an employee's argument that arbitration agreement was not enforceable, in part, because employee was not advised to consult with an attorney).  Accordingly, Mason's fraud argument fails.

## V.     CONCLUSION

Lowe's has shown that (1) Mason entered into a valid and enforceable Arbitration Agreement; (2) the Arbitration Agreement encompasses Mason's claims; and (3) Mason has refused to arbitrate.  Accordingly, Lowe's is entitled to an order compelling Mason to pursue her claims, if at all, through arbitration under the terms of the Arbitration Agreement.

Date: October 18, 2019

Respectfully submitted,

*s/ Ryan J. Wilk*
Michael E. Truncellito
michael.truncellito@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Telephone: 215-665-8700
Fax: 215 664-8760

Ryan J. Wilk
ryan.wilk@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1410
Telephone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendants*