IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE MASON, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:19-cv-00973-CB |
| | ) |
| v. | ) Judge Cathy Bissoon |
| | ) |
| LOWE'S COMPANIES, INC.; LOWE'S HOME CENTERS, LLC; TIM STRATTON; JOE BECTON; STEPHANIE MILLER; JOHN P. MORONE; AND ANDREA DEJOHN, | ) *Electronically Filed* |
| | ) |
| Defendants. | ) |

## REPLY BRIEF

Because Mason's claims fall within the scope of her arbitration agreement with Lowe's, the Court must compel Mason to submit her claims to arbitration. In response to Lowe's well-supported motion, Mason does not offer any facts to call her agreement to arbitrate into question. Instead, she asks the Court to adopt an absurd interpretation of the Arbitration Agreement, which would have the effect of invalidating countless similar agreements and essentially eliminating at-will employment when an employee accepts a broad Arbitration Agreement. Mason then asks the Court to ignore well settled Third Circuit precedent, which establishes that the Arbitration Agreement is supported by consideration. The Court should reject Mason's contentions.[1]

### I.     Mason Has No Facts to Call Her Agreement to Arbitrate Into Question.

"[I]f a party moves to compel arbitration based on an authentic arbitration agreement that

---

[1] As an initial matter, the Court should also strike Mason's brief in opposition as untimely. *See* ECF No. 37. On January 2, the Court extended Mason's response deadline until January 6, while noting that it did "not anticipate granting any further extensions of the aforementioned deadlines." ECF No. 34. Mason had already sought two prior extensions. *See* ECF No. 29, 32. Nevertheless, while Mason filed a paragraph-by-paragraph response to Lowe's motion on January 6 (ECF No. 36), she did not file her brief until a day later. ECF No. 37. This late-filed brief should be stricken.

is attached to the complaint, the Rule 12(b)(6) standard" applies "unless the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) (quotation omitted). Here, Mason has not come forward with any facts calling the agreement to arbitrate into question. *Cf. Corchado v. Foulke Mgmt. Corp.*, 707 F. App'x 761 (3d Cir. 2017) (noting that the party opposing arbitration created a fact issue by submitting declarations after the other party moved to compel arbitration). Indeed, she does not dispute that and she "clicked the 'Agree' button" on the Agreement. Am. Compl., ¶ 117

Instead, Mason relies on the baseless allegations in her Complaint and several legal arguments about enforceability. Am. Compl., ¶ 117. Thus, discovery is not necessary to decide Lowe's motion because "there are no facts in dispute regarding the formation of the Agreement, its terms, or the bargained-for exchange leading to its formation. Nor is the authenticity of the Agreement in dispute." *Davis v. Cintas Corp.*, 2019 U.S. Dist. LEXIS 87261, at *11 (W.D. Pa. May 23, 2019). Contrary to Mason's argument, it is immaterial that Lowe's has not yet answered the complaint. Under *Guidotti*, it is Mason's burden to bring forth facts to call the agreement to arbitrate into question. *Guidotti*, 716 F.3d at 776. While Mason raises *"legal* arguments as to why the Agreement to arbitrate is" not enforceable, "the material *facts* surrounding [her] acceptance of the Agreement and its terms are not fairly in dispute." *Davis*, 2019 U.S. Dist. LEXIS 87261, at *12 (emphasis in original).

## II.     Mason Has No Right to Rescind the Arbitration Agreement.

Mason's primary argument in response to Lowe's Motion to Compel Arbitration is not a challenge to the enforceability of the Arbitration Agreement. Instead, Mason contends that she may rescind the Arbitration Agreement because Lowe's itself breached the Agreement by "fail[ing] to invoke arbitration ***before*** firing Mason." *See* Pl.'s Br. at 7. This interpretation is not

only nonsensical; it finds absolutely no support in the language of the Agreement or the case law.

Courts have consistently held that agreements containing the language in Lowe's arbitration agreement are enforceable. *See, e.g.*, *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997) (enforcing arbitration agreement containing similar "any controversy" language); *Hearon v. AstraZeneca LP*, 2003 U.S. Dist. LEXIS 6628 (E.D. Pa. Mar. 24, 2003); *Zumpano v. Omnipoint Commns., Inc.*, 2001 U.S. Dist. LEXIS 376 (D.N.J. Jan. 18, 2001) (same). Tellingly, despite being faced with the same language in Lowe's agreement, none of these courts ever even entertained the possibility that an employer breached an arbitration agreement by failing to arbitrate before termination. Nor did Lowe's research reveal any such case. And notably absent from Mason's brief in any citation to such authority.

In fact, accepting Mason's argument would have the effect of overturning the presumption of at-will employment for any employee who signs a similar arbitration agreement and invalidating countless other arbitration agreements that contain similar language, which could not have been the parties' intent in executing the Arbitration Agreement.

To be sure, the first step in contract interpretation is to examine the plain language of the contract. *Walsh v. Univ. of Pitt.*, 2015 U.S. Dist. LEXIS 2563, at *21 (W.D. Pa. Jan. 08, 2015). But "before a court may interpret a contract in such a way as to reach an absurd result, it must endeavor to reach an interpretation that is reasonable in light of the parties' intentions." *Empire Sanitary Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651, 655 (Pa. Commw. Ct. 1999).

Here, the Arbitration Agreement provides, "you and Lowe's agree that *any controversy between you and Lowe's* (including agents of Lowe's and any of Lowe's predecessors, including but not limited to Lowe's Home Centers Inc. and Lowe's HIW, Inc.) arising out of your employment or the termination of your employment shall be settled by binding arbitration[.]" Pl.'s Ex. 2 (emphasis added).

While Mason cherry picks a broad, generalized definition of "controversy" that suits her position, applying that definition leads to an absurd result. Any arbitration agreement that contains similar "controversy" language (presumably, there are many) would be rendered voidable at the employee's election if the employer did not agree to arbitrate the underlying reasons for the employee's termination. And an employee would be entitled to a determination of cause before an employer could proceed with a decision to terminate the employee's employment. This would turn the presumption of at-will employment on its head.

To avoid that absurd result, the Court must apply a definition of "controversy" that takes into account the context of the parties' Arbitration Agreement and their clear intent in executing the Agreement. *Black's Law Dictionary* defines "controversy" as "1. A disagreement or a dispute, esp. in public. 2. A justiciable dispute." *Black's Law Dictionary* at 417 (11th ed. 2019).

Applying the latter definition, it is clear that Lowe's was not required to submit to an arbitrator the question of whether it had grounds for terminating Mason's employment. The reason for her termination was not a "justiciable dispute." In fact, Mason admits that she was an at-will employee. *See* Am. Compl, ¶ 125 (referring to Mason as "an at-will employee . . ."). So Lowe's could terminate her for any reason, or no reason at all, and did not overturn that presumption by agreeing to arbitrate certain disputes. Mason's arguments about materiality are thus inapposite. Under the only reasonable interpretation, there was no breach (material or otherwise). And Mason has no basis to rescind the Arbitration Agreement.

### III.     The Arbitration Agreement is Supported by Consideration.

Where, as here, "both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Mason cannot circumvent this precedent. For starters, it is immaterial that Lowe's terminated Mason before she could receive a bonus under the Manager

Bonus Program. It was Lowe's mutual promise to arbitrate dispute, not just the opportunity to participate in the Manager Bonus Program, which served as consideration for the Agreement.

Mason's attempts to distinguish *Blair* are also unavailing. Mason argues that "Lowe's bound itself to no more than an equivocation" by agreeing to arbitrate. Pl.'s Br. at 20. But under the Agreement, both parties are compelled to arbitration. *See* League Decl. Ex. 1. While Mason argues that *maybe* Lowe's would choose not to arbitrate, this argument misses the mark because the Agreement does not contain any such limiting language. *See Dimattei v. Diskin Motors, Inc.*, 2017 WL 1283943, 2017 U.S. Dist. LEXIS 53167, at * 8 (E.D. Pa. Apr. 6, 2017). Mason's reliance on *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540 (E.D. Pa. 2019), is similarly misguided. Unlike in *Crump*, the Agreement here does not give Lowe's "unfettered discretion" to change its obligations. *See Asberry-Jones v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 79387, at *11 (E.D. Pa. May 10, 2019).

### IV.     Mason's Other Arguments Fail.

Mason's reliance on the implied covenant of good faith and fair dealing is misguided as she has not introduced any evidence that Lowe's acted in bad faith, much less terminated her employment to avoid having to pay her a bonus. Likewise, although Mason makes reference to unconscionability, equitable estoppel, coercion and fraud at the end of her brief, she offers no meaningful argument – let alone evidence– to support these theories. Thus, Mason has not carried her heavy burden of invaliding the Arbitration Agreement. *See, e.g.*, *Williams v. Nabors Drilling USA, LP*, 2014 U.S. Dist. LEXIS 23841 (W.D. Pa. Feb. 25, 2014).

Date: January 21, 2020                                              Respectfully submitted,

                                                                                    *s/ Ryan J. Wilk*
                                                                                    Michael E. Truncellito
                                                                                    michael.truncellito@bipc.com
                                                                                    Ryan J. Wilk
                                                                                    ryan.wilk@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building, Suite 200
501 Grant Street
Pittsburgh, PA  15219-1410
Telephone:  412-562-8800
Fax:  412-562-1041

*Attorneys for Defendants*