IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE MASON, | ) |
| Plaintiff, | ) Civil Action No. 19-973 |
| v. | ) Judge Cathy Bissoon |
| LOWE'S COMPANIES, INC., *et. al.*, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

Defendants' Motion to Compel Arbitration and to Dismiss, or In the Alternative, to Stay ("Def. MCA/MTD," Doc. 26) is granted.

Plaintiff filed her Amended Complaint on November 8, 2019 ("AC," Doc. 25), alleging numerous employment related claims — state and federal.

On November 11, 2019, Defendants filed a Motion to Compel Arbitration and a Brief in Support ("Def. Brief," Doc. 27), arguing Plaintiff and her employer, Defendant Lowe's Home Centers, LLC, ("Lowe's") entered into a valid and enforceable arbitration agreement during Plaintiff's employment, and the Court should compel Plaintiff to submit her claims to arbitration and dismiss all the claims pending. On January 6, 2020, Plaintiff filed her Response in Opposition ("Pl. Resp.," Doc. 35) and filed her corrected Brief in Opposition two days after ("Pl. Opp.," Doc. 37).[1] Defendants filed their Reply Brief ("Def. Reply," Doc. 38) on January 21, 2020.

---

[1] Plaintiff originally filed her Brief on January 7, 2020, a day after the deadline imposed by the Court, but filed an errata with corrections on January 8, 2020, which the Court will treat as the operative Brief. While Defendants note that this brief is untimely, the Court finds that striking the brief is too severe of a sanction for a day's untimeliness.

For the following reasons, the Court finds that Plaintiff's claims are subject to arbitration and will grant Defendants' Motion to Compel Arbitration and dismiss Plaintiff's claims.

## I.      **The Arbitration Agreement**

Before compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), a court must determine that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). According to the Agreement to Arbitrate Disputes ("Arbitration Agreement, Doc. 25-2") both Lowe's and Plaintiff "agree that any controversy between [Plaintiff] and Lowe's (including any agents of Lowe's and any of Lowe's predecessors, including but not limited to Lowe's Home Centers, Inc., and Lowe's HIW, Inc.) arising out of [Plaintiff's] employment or termination of [Plaintiff's] employment shall be settled by binding arbitration."

The standard by which the Court should evaluate a motion to compel arbitration is as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.
>
> Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 774 (3d Cir. 2013)

(internal citations omitted).

The Court must first determine the validity of the agreement before addressing whether Plaintiff's claims are those contemplated by the Arbitration Agreement. Defendants argue that, as both parties agreed to be bound by the Arbitration Agreement, it is a valid contract adequately

supported by consideration and not subject to any other legal issues that would call its validity into question. Plaintiff, on the other hand, argues first that Defendants breached the Arbitration Agreement and that she is entitled to a remedy of rescission as a result, or in the alternative, that Defendants failed to provide adequate consideration and she is entitled to rescission or that the Arbitration Agreement is void ab initio.

### A. The Arbitration Agreement is Valid and Enforceable

To determine the validity of the Arbitration Agreement, the Court must examine the contract under the relevant state law. Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002). Under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." Id.

The primary issue in dispute is that of consideration. Plaintiff maintains that the Arbitration Agreement lacks sufficient consideration, stating that the relevant consideration was Lowe's "performance-based bonus compensation." Pl. Opp. at 15. According to Plaintiff's first argument, because she was fired before she could have met a bonus threshold, Lowe's failed to provide adequate consideration, which entitles Plaintiff to the remedy of rescission. Id. Defendants, however, counter that there was adequate consideration because both parties are obligated to arbitrate, which, standing alone, is sufficient consideration, notwithstanding the other examples. Def. Mtd. at 9. Defendants also argue that Plaintiff's continued employment serves as additional consideration, regardless of her at-will status (Id. at 10) and that her opportunity to participate in the Manager Bonus Program is another example of additional consideration. Def. Reply at 5.

The Court of Appeals for the Third Circuit has held that "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." Blair v. Scott Specialty Gases, 283 F.3d 583, 603 (3d Cir. 2002). As in Blair, the language of the Arbitration Agreement is "clear that both parties agreed to be bound to the arbitration agreement." Id.² Plaintiff's argument that she did not read the Arbitration Agreement is unavailing. By clicking the "Agree" button, she manifested her intent to be bound by the Arbitration Agreement. See Davis v. Cintas Corp., 2019 WL 2223486, at *9 (W.D. Pa. May 23, 2019) (signing the contract "presume[s]" that the party "intended to assent to the Agreement and have knowledge of its contents."

The Court finds Crump v. MetaSource Acquisitions, the primary case cited by Plaintiff, inapposite, based on similar grounds cited by Defendant. 373 F. Supp. 3d 540 (E.D.N.Y. 2019). In that case, the court found the arbitration agreement illusory because one party had the "unfettered right to alter the arbitration agreement's existence or its scope." Id. at 545. That is simply not the case here. Indeed, in Crump, the court outlines the test that district courts applying Blair should use to determine whether an arbitration agreement is not illusory: "where (1) the employer may only make modifications in writing; (2) the employer must provide notice to the employees of any modifications; (3) the employee is permitted to accept the modifications by continuing employment; and (4) the modifications are effective only prospectively." Id.

---

² Plaintiff's claim in the Amended Complaint that "the agreement was entirely one-sided, as it bound only employees, and not Lowe's, to arbitrate disputes," (AC ¶125) is unsupported by the plain language of the Arbitration Agreement, which uses the language "you and Lowe's" throughout and notes "mutual promises." Other courts in the Third Circuit have similarly dismissed such arguments. See, e.g. Diamettei v. Diskin Motors, Inc., 2017 WL 1283943, at *4 (E.D. Pa. Apr. 6, 2017) (noting that Plaintiff's argument that the agreement "only purportedly compels arbitration on claims foreseeable [sic] brought by a Plaintiff," no "limiting language in the agreement" existed that showed that the employer would not be similarly bound).

Unlike Crump, where the arbitration agreement included a note that the defendant need not give "notice at any time" of modifications, permitting the defendant "unfettered discretion to modify its arbitration obligations," thus invalidating its commitment (id. at 546), there is no indication that Lowe's is not bound by the same terms of the Arbitration Agreement, or has the right to unilaterally make any changes to the Agreement. The Court does not find the promise to arbitrate illusory, and finds that Blair controls. As the Court finds that Lowe's agreement also to be bound by the arbitration clause to be sufficient consideration under the law, it need not reach Plaintiff's other consideration arguments.

### B. Plaintiff Fails to Show Invalidity of the Contract Based on Other Grounds.

The Court is not persuaded by Plaintiff's other arguments that the Arbitration Agreement is invalid or otherwise unenforceable. Specifically, she argues that the Arbitration Agreement is unenforceable because (1) it is a contract of adhesion; (2) procedurally and substantively unconscionable; (3) equitable estoppel; (4) Lowe's breached its duty of good faith and fair dealing; (5) Plaintiff was coerced into assenting; (6) the individually named Defendants exceeded the scope of their lawful authority as agents; and (7) fraud. AC ¶¶124-130.

#### 1. The Arbitration Agreement is not invalidated based on whether it is contract of adhesion or procedurally and substantively unconscionable.

As the relationship between Plaintiff's arguments about the Arbitration Agreement being a contract of cohesion intertwine with her arguments about unconscionability, the Court will address those arguments in tandem. In analyzing the Arbitration Agreement, the Court notes that it is approximately a page and a half and does not appear to contain fine print or convoluted language. See Cintas, 2019 WL 2223486, at *13. And while there is a disparity in bargaining power between an employer and employee, the fact that a contract may be one of adhesion alone

5

does not necessarily mean that Plaintiff entered the contract unwillingly.  See id.  Indeed, although the Amended Complaint argues that the Agreement was presented to Plaintiff as a "take-it-or-leave-it, non-negotiable demand, hardened by the threat to terminate her employment if she refused," (AC ¶124), other employees refused to sign the Arbitration Agreement and nonetheless remain employed at Lowe's. Declaration of Natalia League ("NL Dec.," Doc. 27-1).

Even if the Arbitration Agreement was procedurally unconscionable by virtue of being a contract of adhesion, Plaintiff would still have to show that the Agreement was substantively unconscionable.  Cintas Corp., 2019 WL 2223486 at *15.  Substantive unconscionability occurs when "contractual terms…are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999).  As discussed *supra*, the Court has found that the Arbitration Agreement binds both parties to arbitrate (thus not unreasonably or grossly favorable to one side), and as the Arbitration Agreement includes no other language that "alter[s] or limit[s] the rights and remedies available to a party in the arbitral forum," it "cannot be construed as substantively unconscionable." Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012).

2.  Plaintiff is not entitled to equitable estoppel.

According to Plaintiff, Defendants are equitably estopped from enforcing the Arbitration Agreement because Plaintiff relied on Lowe's "implicit promises that it would not interfere with her efforts to meet the bonus thresholds; that it would receive and process in good faith her complaints of disparate treatment and harassment; and that it would not subject her to retaliatory and illegal termination for those same complaints." AC ¶126. Defendants respond that Plaintiff has failed to plead what those "implicit promises" entailed, and even if she had, that she failed to demonstrate detrimental reliance on such promises, as she did not indicate how "she changed her

position in any way because of her acceptance of the [Arbitration] Agreement." Def. Reply at 13. Plaintiff responds by arguing that she relied on Lowe's "implicit promise that it would not retaliate against her" for complaining about her mistreatment and claims that she "would never have complained about Becton, Morone, and Stratton but for" the so-called "implicit promise." Pl. Opp. at 25. Plaintiff's theory, however, would undercut entirely the purpose of the Arbitration Agreement. The Arbitration Agreement's purpose is to resolve disputes concerning Plaintiff's employment and/or termination therefrom. Plaintiff's argument is circular and, as such, meritless. If Plaintiff intends to argue that certain promises were made to her — implicit or otherwise — the appropriate place to raise such promises is in arbitration, pursuant to the Arbitration Agreement.

       3.  <u>Defendants did not fail to act in good faith and fair dealing under the Arbitration Agreement.</u>

Plaintiff again argues that Defendants failed in their duty to act in good faith and fair dealing by "breaching" the Arbitration Agreement by not permitting Plaintiff to "participate" in the bonus program contemplated by the Agreement. Pl. Opp. at 22-23. Nowhere in the Arbitration Agreement, however, does it guarantee Plaintiff anything besides "participation" in the program. Plaintiff argues that based on her past performance, both she and Lowe's "contemplated" that she would earn bonus pay in the future. <u>Id.</u> at 23. Whether that is true, nothing in the Arbitration Agreement suggests that Plaintiff's termination breaches the Arbitration Agreement because there is no guarantee that Plaintiff would receive anything as a result of her "participation" in the program. Further, as Defendants say, Plaintiff has failed to plead any facts suggesting that Defendants terminated her employment in bad faith to avoid paying her a bonus. Def. Reply at 5. Even if she had, however, such a claim would be subject to arbitration.

       4.  <u>Plaintiff has failed to show coercion.</u>

As to Plaintiff's willingness in entering into the Arbitration Agreement, even if its terms were not the ones that Plaintiff herself would have chosen, she has failed to demonstrate coercion. She argues that "Lowe's only obtained [Plaintiff's] assent by coercion—specifically, by subjecting her to the threat of Becton's retaliatory harassment." AC ¶128. The Court finds that Plaintiff was not "by the unlawful act of another, [] induced to enter into [a] contractual relationship[] under such circumstances as to indicate that [s]he has been deprived of the exercise of free will." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 911 (3d. Cir. 1985). In <u>Harsco</u>, the Third Circuit found that despite the defendant alleging that he was "humiliated, harassed, cursed at and threatened by plaintiff's employees, to force defendant to sign the Employment Agreement against his will…[t]he court concluded that [defendant] was not the victim of economic duress because the situation that caused him to fear the loss of his job…was of his own making." <u>Id.</u> The Third Circuit also noted that "[The plaintiff] did not manipulate [the defendant's] financial circumstances to render him more susceptible to economic pressure." <u>Id.</u> Similarly, Plaintiff has not suggested that Lowe's has engaged in such conduct here.

       5.  <u>Plaintiff has pled no facts supporting her argument that the Arbitration Agreement should be invalidated based on employees "exceed[ing] the scope of their lawful authority."</u>

Plaintiff argues in a conclusory fashion that the Arbitration Agreement is unenforceable because the individually named Defendants "exceeded the scope of their lawful authority as agents of Lowe's…." AC ¶129. However, she does not provide any facts or law to explain what she means by this statement and why this would invalidate the Arbitration Agreement. As a result, this argument cannot render the Arbitration Agreement unenforceable. This is not a question for the jury because there are no facts alleged to be disputed.

>  6. Plaintiff has not shown that Defendants fraudulent induced her to sign the Arbitration Agreement.

Plaintiff argues that Defendants fraudulently represented the Arbitration Agreement and failed to disclose material terms, or advise employees to consult with a lawyer before accepting the agreement. AC ¶130. None of these allegations, however, constitute fraud with respect to the Arbitration Agreement. First, the Court does not find that the Arbitration Agreement failed to disclose material terms. As Defendants note, the Arbitration Agreement notes in all-capitalized font on multiple occasions that the Agreement binds both parties to arbitration, highlighting its importance and weighing in favor of enforceability. Def. Reply at 16; see, e.g., Allstate Ins. Co. v. Toll Bros., Inc., 171 F. Supp. 3d 417, 431 (E.D. Pa. 2016) (collecting cases in which conspicuous, large, text as written highlights terms to less sophisticated parties). Second, Plaintiff's failure to read the Arbitration Agreement does not mean that Lowe's fraudulently induced her into signing, as discussed *infra*. Finally, companies need not advise their employees to consult with counsel before signing any agreements. See ACE Am. Ins. Co. v. Guerriero, 2017 WL 3641905, at *9 (D.N.J. Aug. 24, 2017). Plaintiff has raised no facts that could be construed as fraudulent action on Defendants' behalf, and thus this final argument fails to invalidate the Arbitration Agreement.

## II.  The Arbitration Agreement Applies To Plaintiff's Situation

In the alternative, Plaintiff argues that Defendant materially breached the Arbitration Agreement, thus relieving her of "any duty to perform, including the specific duty that she submit her case to arbitration. To support her claim, Plaintiff contends that the language "any controversy" in the Arbitration Agreement contemplates a requirement that Lowe's arbitrate her termination prior to terminating her. Pl. Opp. at 4. Plaintiff explains it as thus: upon signing the Arbitration Agreement, her status as an at-will employee was supposedly changed because her

9

termination was a "controversy" that required arbitration and Lowe's could not terminate her without arbitration. Id. at 6.

Though a novel argument, Plaintiff's contentions are wholly unsupported by the law, or by the plain language of the Arbitration Agreement. As Defendants note in their Reply, Plaintiff has offered no case law, under similar circumstances, holding that an employer is required to arbitrate an employee's termination prior to terminating that employee. Def. Reply at 3. Such a finding would nullify the at-will status for all employees who sign similar arbitration agreements. That is not the law.

### III. Conclusion

The Court does not agree with Plaintiff that she has raised facts sufficient to place the agreement to arbitrate in dispute. While the Court is not without sympathy for Plaintiff's situation and allegations, as a matter of law, Plaintiff has agreed to arbitrate these claims.

Consistent with the foregoing, Defendants' Motion to Compel Arbitration (**Doc. 26**) is **GRANTED**. All of Plaintiff's counts in her Amended Complaint are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

June 30, 2020                                                           s\Cathy Bissoon
                                                                        Cathy Bissoon
                                                                        United States District Judge

cc (via ECF email notification):

All Counsel of Record